AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>VIGILAND D'HAITI<br><br>Defendant(s) | )<br>)<br>) Case No.<br>)  6:22-mj-1699<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 27, 2022__ in the county of __Orange__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Knowingly possessed child pornography |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Ryan G. Eggland, Special Agent, DHS, HSI
Printed name and title

Sworn to before me and signed in my presence.

Date: 07/13/2022

_____
Judge's signature

City and state: Orlando, Florida

EMBRY J. KIDD, United State Magistrate Judge
Printed name and title

STATE OF FLORIDA                    CASE NO. 6:22-mj-1699

COUNTY OF ORANGE

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ryan G. Eggland, being duly sworn, declare and state as follows:

1. I am a Special Agent ("SA") employed with the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI") and have been so employed since October 2009. I am currently assigned to the Orlando, Florida office of HSI, and my duties include the enforcement of federal criminal statutes including, but not limited to, Titles 8, 18, 19, 21, and 31 of the United States Code. I am a law enforcement officer of the United States within the meaning of 19 U.S.C. § 1401(i) and am empowered to investigate and make arrests for violations of United States criminal laws within the meaning of 18 U.S.C. § 2510(7). Before becoming employed with HSI, I was employed as a Special Agent with the Internal Revenue Service Criminal Investigation Division ("IRS-CID") for approximately eight years. As a Special Agent with IRS-CID, I was charged with the enforcement of federal criminal statutes including, but not limited to, Titles 18, 26, and 31 of the United States Code. Before becoming a Special Agent in 2001, I worked for Merrill Lynch for approximately three years conducting financial analysis of businesses and individuals.

2. My formal education includes a Bachelor's degree in Business Administration and a Master's degree in Business Administration from the University of North Florida. Through numerous advanced law enforcement training programs,

1

I have received specialized training in the investigations of sex crimes, child exploitation, child pornography and computer crimes. I have participated in training courses for the investigation and enforcement of child pornography laws in which computers, smart phones and other digital storage devices are used as the means for receiving, transmitting, and storing child pornography. I have been involved in investigations involving child pornography and online solicitation/enticement of a minor. I have participated in investigations of persons suspected of violating federal child pornography laws, including 18 U.S.C. §§ 2251, 2252 and 2252A. Additionally, I have been involved in authoring and participated in the execution of search warrants involving searches and seizures of computers, computer equipment, software and electronically stored information.

3. This affidavit is submitted in support of an application for the issuance of a criminal complaint and arrest warrant for VIGILAND D'HAITI ("D'HAITI"). As set forth in more detail below, I believe there is probable cause that D'HAITI knowingly possessed child pornography, that is, sexually explicit images of minors, in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B) in the Middle District of Florida.

4. I make this affidavit from personal knowledge based on my participation in this investigation, information from other criminal investigators, information from law enforcement officers, information from agency reports, and the review of documents provided to me by these witnesses and law enforcement officers. Because

2

this affidavit is being submitted for the limited purpose of seeking a criminal complaint, I have not set forth each and every fact learned during the course of this investigation.

## STATUTORY AUTHORITY

5. Title 18, United States Code, Section 2252A prohibits a person from knowingly transporting, shipping, receiving, distributing, or possessing any child pornography, as defined in 18 U.S.C. Section 2256(8), using any means or facility of in interstate commerce, or in or affecting interstate commerce.

## DETAILS OF THE INVESTIGATION

A. Background on Snapchat and Private Photo Vault

6. "Snapchat" is a mobile application ("app") that is owned, maintained, controlled, or operated by Snap Incorporated, a mobile messaging application service provider, headquartered at 2772 Donald Douglas Loop North, Santa Monica, California 90405. The application provides a way to share moments with photos, videos, and text. Snapchat's differentiating feature from other communications applications is that a sender is able to set a variable amount of time the message is viewable by the receiver. This time can be between one and ten seconds. At the expiration of time, the message is deleted from Snapchat's servers. Similarly, the message disappears from the user's devices. If the receiver of a Snapchat message does not access the application on their device the message remains undelivered. Snapchat stores undelivered messages for 30 days. After 30 days, the messages are deleted from the company's servers.

3

7. Snapchat users have the following abilities, among others:

a. Snaps: A user takes a photo or video using his or her phone's camera (or the Snapchat app's camera), which may be shared directly with the user's friends, or in a Story (explained below), or Chat. Pictures and videos can also be sent from the saved pictures/videos in the gallery of the device. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it is opened in the case of the recipient). Users are able to save a photo or video they have taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

b. Chat: A user can also type messages, send photos/videos (Snaps), audio notes, and video notes to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep. The user can clear the message by tapping it again. This will result in it being deleted from Snap's services. Users can also delete Chats that they have sent to a recipient before the recipient has opened the Chat or after the recipient has saved the Chat. Users can also chat in groups. Chats sent in groups are deleted after 24 hours whether they are opened or not.

8. Private Photo Vault– Pic Safe (the "Private Photo Vault") is an app available in the Apple App Store designed to hide photos and videos behind a passcode

4

protected barrier. The user begins by entering a passcode to restrict access to the app and its contents. Next, is an optional recovery email entry in the event the user forgets his/her passcode. The system warns that if you ever forget your passcode and don't have a backup email setup you won't be able to access your photos. Finally, the user is instructed to select photos/videos to begin importing. These photos/videos will be securely locked behind your passcode. The app allows for taking photos/videos with the phone itself or importing the photos from the phone's photo gallery. After adding photos/videos from the phone's gallery, the app has a feature that will delete the same photos/videos from the photo gallery of the phone. A warning banner appears reminding the user to also delete the photos/videos from the phone's recently deleted folder. This app also allows for private browsing of the internet within the app. Photos and/or videos have to be manually loaded into the app by the user or downloaded by the user into the app through the private browser.

9. Once the user of the Private Photo Vault has downloaded and set up the app, there are several settings that can enhance the privacy of the vault and the photos/videos within the vault. A "Break in Report" setting can be enabled that will snap a photo of the individual using the phone and record the phone's GPS location anytime someone tries to break into the app (that is, attempts to open the app with the wrong passcode). A "Face Down Lock" setting can be enabled that will help hide the app by automatically switching apps when the user turns the phone face down. When the phone is returned to right side up, a different app is open and in use. A "Decoy

Passcode" feature allows the user to create a decoy photo vault that will activate any time the decoy passcode is used while hiding all of the contents of the actual vault. Another feature allows the user to easily transfer photos between the Private Photo Vault and the user's computer.

B. <u>Arrest of D'HAITI and Discovery of Child Pornography</u>

10. On March 27, 2022, D'HAITI was arrested at his residence in Orange County, Florida, in the Middle District of Florida, by the Winter Garden Police Department and Clermont Police Department ("Clermont PD") for violations of the laws of the state of Florida, to-wit: Lewd and Lascivious Molestation.[1] Incident to arrest, D'HAITI's cell phone, which was on his person, was seized and placed into evidence. Clermont PD ultimately obtained a search warrant for D'HAITI's cell phone, an iPhone 12 Pro Max (the "Target Phone").[2]

11. Forensic analysis of the Target Phone revealed that it contained Private Photo Vault, a "photo vault" application described in detail above. The passcode set for the app coincides with D'HAITI's date of birth. The contents of the Private Photo Vault on the Target Phone included multiple nude photographs of a female subject who appeared to be a juvenile (the "Minor Victim"). The face of the Minor Victim

---

[1] According to the allegations, D'HAITI sexually molested minors (to whom he gained access through his cheerleading gym), and also had inappropriate communications with minors over Snapchat.
[2] The Target Phone has D'HAITI's home address in Orange County, Florida saved as "Home" and his cheerleading gym located in Lake County, Florida saved as "Work."

6

was clearly visible in each of the photographs. Six nude and/or sexually explicit photographs and one video were positively identified as showing the Minor Victim. Based on identical items in the background and/or a distinct necklace worn by the Minor Victim, I have attributed a total of seven photos and seven videos to the Minor Victim from the Private Photo Vault.

12. Although all of the photos of the Minor Victim found in the Private Photo Vault are nude photos, only one qualifies as child pornography. In that photo, the Minor Victim is sitting on the bathroom floor naked from the waist down with her legs spread exposing the opening of her vagina. The camera is positioned low and close to the Minor Victim's vagina, making that the focal point of the photo.

13. All of the videos found in the Private Photo Vault that show the Minor Victim qualify as child pornography. The videos range from 9 to 26 seconds in length with sound. All of them depict a close angle of the Minor Victim's vaginal area while she digitally penetrates and rubs the area. The camera angle is low and close to the Minor Victim's vagina, making that the focal point of the video.

14. Further forensic analysis revealed a female subject in the "Contacts" section of the Target Phone with an attached contact picture resembling the Minor Victim shown in the nude photos mentioned above. Research on the phone number of that contact and other public records and law enforcement databases helped the Clermont PD identify the Minor Victim, who is known to be a minor born in 2005 (thus, the Minor Victim is currently about 16 years old).

15. Based on a preliminary review, the Private Photo Vault also contained other photographs and videos of a sexually explicit nature.[3]

C. Interviews of the Minor Victim

16. The Clermont PD sanitized some of the photos found in the Private Photo Vault so that the Minor Victim could be identified without the photos constituting child pornography. Clermont PD met with the father of the Minor Victim, who immediately identified the Minor Victim in all three pictures as his daughter. Later, the Clermont PD met with the Minor Victim, who immediately identified herself as the person in the sexually explicit photos. Finally, the Clermont PD met with the mother of the Minor Victim, who also identified the Minor Victim shown in the sexually explicit photos as her daughter. On April 26, 2022, the Clermont PD scheduled an emergency forensic interview to be conducted for the Minor Victim. During this interview, the Minor Victim advised, among other things, that the nude images were definitely of her, but that she couldn't remember taking any nude photos at any point in time and that she was unsure how D'HAITI had them on his cell phone.

---

[3] Specifically, of the nine videos and twelve photos also found in the Private Photo Vault, two of the photos and one video meet the definition of pornography. However, the persons depicted in them have not been fully identified to determine age. Eight of the videos are not viewable in the digital copy of the phone that I was reviewing. Five of the photos depict what appear to be young girls at varying states of undress (from bra and panties to bare breasts). Three of the photos are of clothed young girls who appear to be approximately of high school age. The final two photos are screenshots of a video chat with a female. In one of those photos, D'HAITI can be seen shirtless in the top corner of the video chat.

8

She denied ever being alone with D'HAITI at any point in time, at the cheerleading gym or elsewhere, and spoke as if she didn't care that he had the photos on his phone.[4] The Minor Victim described D'HAITI as a "second father" figure in her life. Later in the interview, she stated that she was angry about the photos.

17. On May 9, 2022, during another interview with the Clermont PD, the Minor Victim confirmed that she had sent D'HAITI nude videos and photographs of herself, at D'HAITI's demand, using Snapchat. She noted that she would only send pictures via Snapchat and that at least 3 or 4 times she received pictures from D'HAITI of what she described as "dick pics."[5] The Minor Victim said that she first met D'HAITI in March of 2021 when she was assisting her father with installing cheerleading floors for D'Haiti's cheerleading gym, and that she had a friendly-type relationship with him.

18. According to the Minor Victim, D'HAITI gave her a "hoodie" sweatshirt for her 16th birthday. The parents of the Minor Victim also stated that they had to input the Minor Victim's birthdate on the paperwork for D'HAITI's cheerleading gym when they signed her up for lessons at the gym.

---

[4] According to the Minor Victim's father, he (the father) had a friendship with D'HAITI through working with him to install gym flooring. The Minor Victim also helped with the installation of gym flooring and took cheerleading lessons at D'HAITI's gym.

[5] The results of the extraction of the Target Phone show that D'HAITI and the Minor Victim communicated over Snapchat.

19.     From my training and experience, I know it is common for minor victims of sexual exploitation to avoid discussing the details of their sexual exploitation through several defense mechanisms. Some of these include general topic avoidance, initial denial of events even when softly confronted with images/evidence, and quickly passing through a topic with a short, canned answer the minor thinks the interviewer wants to hear. Even with professionally trained forensic interviewers, it is common for minors to avoid discussing the full details of their sexual exploitation for months, years, or not at all. Trained child forensic interviewers, such as the interviewers in this case, use tactics to help the minor become more comfortable in the room, to establish an awareness of and the importance of the difference between truth and a lie, to spur conversation from the minor to elicit descriptions of relationships and events in their own words as they actually were, and to avoid any leading components to questions or discussions that may steer minors away from their own words.

20.     From my training and experience, I also know that individuals involved in child exploitation will often save tokens of their exploitive conquests as a reminder of past successes and/or erotic moments for later masturbation or sexual enjoyment. These tokens/momentos may take the form of a physical reminder (like a pair of underwear or some other material object). Alternatively, the tokens/momentos could also take the form of visual reminders (like images of child pornography, child erotica, or even benign photos or videos of the victim). Individuals involved in child

exploitation often protect or conceal their "trophy" collection from others in order to hide their criminal conduct.

21. The Minor Victim resides in the Middle District of Florida. Based on Florida Department of Motor Vehicles records, D'HAITI and his wife reside in Orange County, and the cheerleading gym through which the Minor Victim met D'Haiti is located in Lake County, all in the Middle District of Florida.

## CONCLUSION

22. Based on the above, I have probable cause to believe that D'HAITI knowingly possessed materials that contained images of child pornography that had been transported using a facility of interstate commerce, in violation of 18 U.S.C. §§ 2252A(a)(5)(B).

Affiant further sayeth naught.

_____
Ryan G. Eggland, Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 and 41(d)(3) before me this 13 day of July, 2022.

_____
EMBRY J. KIDD
United States Magistrate Judge

11